UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Thomas Dewey,

Plaintiff,

v. Case No. 13-13467

Carolyn W. Colvin, Acting Commissioner of Social Security,

Sean F. Cox
United States District Court Judge

Defendant.
_________________________________/

**OPINION & ORDER**

Plaintiff Thomas Dewey ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("the Commissioner") denying his applications for Social Security Disability benefits and Supplemental Security Income benefits. Both parties filed motions for summary judgment, which are presently before this Court. As explained below, this Court concludes that the Administrative Law Judge failed to properly evaluate the medical opinion evidence from Plaintiff's treating psychiatrist and failed to properly evaluate and explain her credibility assessment of Plaintiff. This Court shall therefore enter judgment in favor of Plaintiff, REVERSING the Commissioner's decision and REMANDING this case to the Social Security Administration for further administrative proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g). As such, the Court shall GRANT IN PART Plaintiff's Motion for Summary Judgment and shall DENY the Commissioner's Motion for Summary Judgment.

**A. Procedural History**

Plaintiff filed concurrent applications for Social Security Disability benefits ("SSD") and Supplemental Security Income benefits ("SSI") on January 28, 2010, alleging disability since March 23, 2009. Plaintiff's claims were denied at the initial administrative stages. Plaintiff appealed and requested a *de novo* hearing before an administrative law judge ("ALJ").

That hearing was held before ALJ JoErin O'Leary on December 21, 2011. Plaintiff, who was represented by counsel, appeared and testified at that hearing. In a written decision issued on January 25, 2012, ALJ O'Leary concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from March 23, 2009, through the date of" the decision.

Plaintiff requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied review, rendering the ALJ's adverse decision the Commissioner's final decision.

**B. The Administrative Record**

The administrative record is quite extensive. The Court includes here some of the evidence in the record that is relevant to the issues in this Opinion and Order.

Plaintiff testified that he began experiencing severe constant chest pain in 2009. At that time, he treated with Richard Hall, D.O., for that chest pain. Dr. Hall prescribed a variety of medications, but Plaintiff's symptoms continued.

On April 19, 2009, Plaintiff went to the emergency department at Caro Community Hospital, due to chest pain. (Tr. at 255). At that time, Plaintiff reported having sharp chest pains of moderate severity, that worsened with breathing or movement. A physical exam revealed muscle tenderness in the chest wall. (Tr. at 258). Plaintiff was diagnosed with atypical chest

pain, costochondritis in the chest wall (an inflammation of the cartilage that connects the ribs to the breastbone) and marijuana abuse. (Tr. at 256). Plaintiff was treated with medications and was discharged.

But Plaintiff presented to the emergency department at Caro Community Hospital again on April 24, 2009, via ambulance, and was unconscious and unresponsive upon arrival. Plaintiff's friend reported that Plaintiff grabbed his chest and then passed out. (Tr. at 262).

During the next few months, Plaintiff underwent several tests. X-rays of his chest and a CT scan of Plaintiff's head were unremarkable. (Tr. at 491). Plaintiff had a cardiovascular work-up which was normal. (Tr. at 521). Plaintiff had a cardiac catheterization that revealed that Plaintiff "has widely patent coronary arteries and normal left ventricular function" and has "normal renal arteries." (Tr. at 374). After reporting experiencing recurrent episodes of syncope, Plaintiff underwent a tilt-table test, which was negative. After those tests, Plaintiff's treaters diagnosed him with chest pain probably secondary to costochondritis. Plaintiff was given various medications for pain.

On December 14, 2009, Plaintiff went to the emergency room at Hills and Dales General Hospital, again complaining of chest pain. (Tr. at 362). With respect to the history of the present illness, the report stated, in pertinent part:

> Ths is a 31-year old gentleman who always was reasonably healthy. He said he has been having pain in his chest, going on for several months, started actually last spring. He has had quite extensive work up, including stress tests, cardiac cath, echocardiogram, Holter monitor, and endoscopy and apparently none have found any abnormalities. He was told that his doctors were thinking it was "costochondritis." He said it is constant pain, right in the center of his chest and just never seems to go away, day or night. He occasionally gets nauseous, vomits once in a while.

(Tr. at 362). The report indicates that the physician sat down with Plaintiff and discussed the

testing that had been performed thus far, which was quite extensive. The physician noted that the only thing he could see that had not been done was a CT scan looking for a mass or dissection and he therefore ordered a CT scan. (*Id*.). The report states:

> CT scan was done and, unfortunately, the radiologist did in fact find some significant findings. There was an 8 mm right midlobe nodule and then a right hilar 2.8 cm mass. The radiologist said that the possibility of neoplastic process must be excluded.
> . . . .
> So, I went over all this with the patient. He was at least happy that somebody finally found something, he said, because it was just getting frustrating for him, but he is motivated to follow up. He asked if I had anything else for pain, other than this Percocet which he is on, which he said didn't really help. We will put him on a Duragesic patch. That will get him through his appointment at least.

(Tr. at 363).

As to the masses in his chest, Plaintiff testified that a thoracic surgeon at the University of Michigan said it was too risky to biopsy or remove the masses. Plaintiff has scans done every six months to see if the masses are growing. (12/21/11 Hr. Tr. at 41; *see also* Tr. at 443, noting "there is no evidence of increased metabolic activity" with respect to the masses but recommending new scans of the chest in six months). Plaintiff testified that his family doctor, Dr. Hall, believes the masses in his chest are what is causing his chest pain but, to date, the doctors are not sure. (*Id*. at 41-42).

After the masses were found, Plaintiff has continued to complaint of chest pain. He has also continued to report dizziness and passing out on various occasions. (*See, e.g.*, Tr. at 434 & 438). Plaintiff's treating physicians have continued to prescribe pain medications and medications for depression.

Plaintiff testified at the December 21, 2011 administrative hearing that he suffers from significant chest pain, fainting of an unknown cause, two masses in his chest that appear to be

benign, hypertension, arthritis in the knees, lower back pain, and depression and anxiety. (12/21/11 Hrg. Tr. at 41-42).

Plaintiff testified that his symptoms include: passing out at various times, constant chest pain that feels like a tightness around his heart, dizziness, shortness of breath upon exertion, panic attacks at least twice per day, difficulty sleeping, problems with concentration and memory, fluctuating weight, knee pain and numbness, and nausea. (*Id*. at 41-42, 47-48, 57-58, 63-64).

During the hearing, Plaintiff testified as to what a "typical day" is like for him:

> Q. Okay. Can you give me an idea of your typical day?
> A. Well, I usually get up roughly 7:00-7:30 when the boys, my boys wake up.
> Q. Okay. How old are your kids?
> A. My oldest one is four and my youngest one is almost 17 months.
> Q. Okay.
> A. I usually get up in the morning with the kids and with my wife. We usually have breakfast together with the kids. My oldest son, he is in preschool, so we usually do his homework or, you know, try to interact with him before he leaves for school.
> Q. Sure.
> A. He goes off to school. My youngest son lays down for a nap and if the night before if I was in so much pain where I couldn't sleep, my wife lets me try to take a nap or try to catch up on rest during the day. And on really, really good days I'm able to help out a little bit around the house, like I'm able to do the dishes for 15-20 minutes, able to pick up clothes off the floor, just little thing to try to help my wife out.
> Q. Okay. Now, is she working outside the home?
> A. Not at the moment, no.
> Q. Okay.
> A. My family doctor thought it'd be a good idea if she stayed home with me and the boys, because we can't afford daycare at the moment and I'm not able to be alone with my boys for fear of collapsing, so she stays home and she takes care of us and she's also attending an online school at the moment . . .

(12/21/11 Hrg. Tr. at 51-52).

The administrative record reflects that Plaintiff treated with Dr. Barry Binkley, M.D., a

psychiatrist.

Dr. Binkley submitted a report, dated December 7, 2011, stating that Plaintiff is a patient of his and that, in his medical opinion, Plaintiff is currently not using drugs and/or alcohol and remains disabled. (Tr. at 849). This report was evaluated by the ALJ.

The administrative record also contains a "Psychiatric/Psychological Impairment Questionnaire" report that Dr. Binkley signed on December 14, 2011. (Tr. at 850-857).

In that December 14, 2011 report, Dr. Binkley states that his diagnosis of Plaintiff is "severe depression and post traumatic stress disorder due to undiagnosed health problems and they worsened when his home was burned down by adolescents in March, 2011, and he lost everything." (Tr. at 850).

Dr. Binkley indicated that Plaintiff's current GAF[1] score was 48 and that his lowest GAF score during the past year was 40. (*Id*.).

Dr. Binkley identified the following clinical findings that support his diagnosis: 1) appetite disturbance with weight change; 2) sleep disturbance; 3) mood disturbance; 4) recurrent panic attacks; 5) psychomotor agitation or retardation; 6) feelings of guilt/worthlessness; 7) difficulty thinking or concentrating; 8) suicidal ideation or attempts; 9) social withdrawal or isolation; 10) blunt, flat or inappropriate affect; 11) decreased energy; 12) intrusive recollections of a traumatic experience; 13) persistent irrational fears; 14) generalized persistent anxiety; and 15) hostility and irritability.

---

[1]"A GAF score is a subjective determination that represents 'the clinician's judgment of the individual's overall lever of functioning.'" *Macielak v. Comm'r of Soc. Sec*., 2013 WL 6839292 at *2 n.1 (E.D. Mich. 2013). "A GAF score of 41-50 indicates 'serious symptoms," such as suicidal ideation, "or any serious impairment in social, occupational, or school functioning." *Curler v. Comm'r of Soc. Sec*., 561 F. App'x. 464, 466 n.2.

(Tr. at 851).

Dr. Binkley stated that Plaintiff is markedly limited with respect to: "the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. at 854). Dr. Binkley stated that Plaintiff is moderately limited with respect to: 1) the ability to remember locations and work-like procedures; 2) the ability to understand and remember detailed instructions; 3) the ability to carry out detailed instructions; 4) the ability to maintain attention and concentration for extended periods; 5) the ability to work in coordination with or proximity to others without being distracted by them; and 6) the ability to set realistic goals or make plans independently. He states that Plaintiff is also mildly limited with respect to: 1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; 2) the ability to sustain ordinary routine without supervision; 3) the ability to make simple work related decisions; 4) the ability to interact appropriately with the general public; 5) the ability to accept instructions and respond appropriately to criticism from supervisors; 6) the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; 7) the ability to respond appropriately to changes in the work setting; and 8) the ability to travel to unfamiliar places or use public transportation. (Tr. at 853-855).

In response to the question "Does the claimant experience episodes of deterioration or decompensation in work or work like settings which cause him/her to withdraw from that situation and/or experience exacerbation of signs or symptoms?" Dr. Binkley responded "Yes," and explained that Plaintiff "has unpredictable passing out episodes that can occur unpredictably

. . .”

Dr. Binkley stated that Plaintiff could only tolerate low stress and explained that the “Problem is that he worries excessively (rightfully so) that he could pass out unpredictably and cause harm to self or others.” (Tr. at 856). Finally, Dr. Binkley opined that, on average, Plaintiff would likely be absent from work as a result of his impairments more than three times a month. (Tr. at 857).

**C. Social Security Framework**

The Commissioner determines the merit of a social security disability claim by following a sequential five-step analysis. *See* 20 C.F.R. § 404.1520. The Commissioner must determine: (1) whether the claimant is working; (2) whether the alleged impairment is severe; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can still do past relevant work; and, (5) when considering the claimant’s age, education, work experience, and residual functional capacity, whether the claimant can do other work. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of satisfying the first four steps. *See Longworth v. Comm'r Soc. Sec. Admin*., 402 F.3d 591, 595 (6th Cir.2005). The burden then shifts to the Commissioner to answer the final inquiry. *Id*.

“In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere.” *Rogers v. Comm’r of Soc. Sec*., 486 F.3d 234, 242 (6th Cir. 2007). “The Commissioner is required to ‘evaluate every medical opinion’ that is presented in the record.” *Monateri v. Comm’r of Soc. Sec*., 436 F. A’ppx. 434, 440 (6th Cir. 2011); 20 C.F.R. § 404.1527(c) (“we will evaluate every medical opinion we receive.”).

“Furthermore, the Commissioner is bound by the ‘treating physician rule.” *Id*. Under

the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians." *Rogers*, 486 F.3d at 242. The rationale behind the rule, and the manner in which it operates, is explained as follows:

> Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. 20 C.F.R. § 416.927(d)(2). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record," then it will be accorded controlling weight. *Wilson*, 378 F.3d at 544. When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id*. However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").
>
> There is an additional procedural requirement associated with the treating physician rule. Specifically, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. at *5. The purpose of this procedural aspect of the treating physician rule is two-fold. First, the explanation " 'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.' " *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id*. Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based

upon the record. *Id*.

*Rogers*, 486 F.3d at 242-43.

**D. The ALJ's Findings**

In reaching her determination, the ALJ made the following findings. At step one, she determined that Plaintiff has not engaged in substantial gainful activity since March 23, 2009, the alleged onset date. The ALJ found that Plaintiff has the following severe impairments: chest pain, syncope, hypertension, osteoarthritis, anxiety, and major depressive disorder. The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (ALJ Opin. at 3-6).

The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that Plaintiff is unable to stand and/or walk for more than 4 hours in an 8-hour day. Plaintiff is unable to climb ladders, ropes, and scaffolds. He is unable to work around any occupational hazards such as unprotected heights or dangerous moving machinery. Plaintiff is limited to simple tasks performed in settings with small familiar groups. Plaintiff should have no interaction with the general public. (ALJ Opin. at 6-11).

The ALJ found that Plaintiff is unable to perform any past relevant work. (ALJ Opin. at 11). She further found that:

> 7. [Plaintiff] was born on June 6, 1978 and was 30 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date (20 CFR 404.1563 and 416.963).
> 8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
> 9. Transferability of job skills is not material to the determination of disability because under the Medical-Vocational Rules as framework supports a finding that [Plaintiff] is "not disabled," whether or not [he] has

transferable job skills (See SSR 82-41 and 20 CFR Parrt 404, Subpart P, Appendix 2).

10. Considering [Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 4041569(a), 416.969, and 416.969(a).

(*Id*.). Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from March 23, 2009, through the date of the decision on January 25, 2012. (ALJ Opin. at 12).

With respect to the ALJ's consideration of the opinion evidence, the ALJ gave "great weight" to the state agency reviewing medical consultants, Daniel Dolanski, D.O. and Robert Newhouse, M.D., who did not examine or treat Plaintiff. (ALJ Opin. at 9).

The ALJ gave Dr. Barry Binkley, M.D., Plaintiff's treating psychiatrist, "little weight," explaining only as follows:

> Dr. Binkley, the claimant's treating psychiatrist, completed a medical source statement on behalf of the claimant. (30F). Dr. Binkley opined that the claimant was not on any drugs or alcohol at the time of his opinion in December 2011 and he remained disabled. Again, the issue as to whether a claimant is disabled is a legal determination reserved to the Commissioner (20 CFR 404.1527(e), 416.927(e), and Social Security Ruling 96-5p). Further, the objective evidence regarding the claimant's mental impairments does not disclose more than moderate findings of depression and anxiety. I assign little weight to Dr. Binkley's opinion.

(ALJ Opin. at 9-10). Thus, the only opinion evidence that the ALJ evaluated or discussed regarding Dr. Binkley was a one-page statement that he submitted, stating that Plaintiff was not on any drugs or alcohol at the time and remained disabled. The ALJ did not reference or address any other opinion evidence relating to Dr. Binkley.

The ALJ determined that Plaintiff's allegations of disability to be "less than fully credible," explaining as follows:

> Overall, I find the claimant's allegations of disability less than fully credible. As noted above, the objective evidence does not match the claimant's subjective allegations regarding his chest pain (2F, 4F, 6F, 10F, 12F, 13F, and 24F). In addition, imaging of the claimant's knees and spine has not shown more than moderate degenerative changes (22F and 29F). In addition, imaging of the claimant's knees and spine has not shown more than moderate degenerative changes (22F and 29F). I have accounted for these findings by limiting the claimant to less a limited range of work with reduced standing and walking. In addition, the evidence regarding the claimant's mental impairments shows moderate findings of anxiety and depression. However, I have accounted for these findings by limiting the claimant's contact with others and precluding his contact with the general public. He is also limited to performing simple tasks. The objective evidence does not match the claimant's subjective complaints regarding his severe impairments.
>
> In addition, the claimant testified that he is able to assist with some household chores and assist with caring for his two young children, which can be physically and mentally demanding. Therefore, the undersigned finds the claimant's allegations of disability less than fully credible.

(ALJ Opin. at 10). The ALJ also stated that, while Plaintiff's medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (ALJ Opin. at 7).

**E. Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he or she employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971). This Court may not "resolve conflicts in evidence, nor decide questions of credibility." *Walters*, *supra*, at 528.

If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports another conclusion. *Her v. Comm'r of Soc. Sec*., 203 F.3d 3d 388, 389-90 (6th Cir. 1999). Thus, the standard of review is deferential and "presupposes that there is a 'zone of choice' within which decisions makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**F. Analysis**

Plaintiff challenges the ALJ's decisions with respect to: 1) the weight he accorded to opinion evidence from his treating psychiatrist, Dr. Binkley; and 2) his evaluation as to Plaintiff's credibility. Plaintiff also asserts that the ALJ relied on improper testimony from the vocational expert. This Court reviews the portions of the ALJ's decision challenged by Plaintiff to determine whether they are supported by "substantial evidence."

Plaintiff first argues that the ALJ failed to follow the treating physician rule. Plaintiff asserts that the ALJ failed to acknowledge the findings and opinions provided by treating psychiatrist Dr. Binkley in the Psychiatric/Psychological Impairment Questionnaire. (*See* Pl.'s Br. at 12-15).

This Court agrees that the ALJ failed to properly evaluate the medical opinion evidence from Plaintiff's treating psychiatrist.

Again, the ALJ is "required to 'evaluate every medical opinion' that is presented in the

record." *Monateri v. Comm'r of Soc. Sec.*, 436 F. A'ppx. 434, 440 (6th Cir. 2011); 20 C.F.R. § 404.1527(c) ("we will evaluate every medical opinion we receive.").

Here, the administrative record reflects that the opinion evidence relating to Dr. Binkley included both: 1) a one-page report, dated December 7, 2011, stating that Plaintiff is a patient of his and that, in his medical opinion, Plaintiff is currently not using drugs and/or alcohol and remains disabled (Tr. at 849); and 2) an eight-page Psychiatric/Psychological Impairment Questionnaire. (Tr. at 850-857). That eight-page report contained the substance of Dr. Binkley's medical opinions and the support for them.

Notably, in reviewing the opinion evidence, the ALJ evaluated only the one-page report dated December 7, 2011, and rejected it because it was merely an opinion on the ultimate issue of disability, which is a legal determination reserved for the Commissioner.

Accordingly, the ALJ violated the clear procedural requirement of §1527(c) by not evaluating the medical opinions of Dr. Binkley that were set forth in his eight-page report dated December 15, 2011. The Sixth Circuit has instructed that the Commissioner's failure to follow clear procedural requirements "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Moreover, because the ALJ failed to evaluate that opinion evidence from Dr. Binkley at all, the ALJ did not comply with other procedural requirements concerning the treating physician rule.

"In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians,

commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. As explained in more detail in Section C of this Opinion, when the ALJ declines to give a treating physician's opinion "controlling weight," the ALJ must provide "good reasons" for discounting the treating physician's opinions. In addition, where "a treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*[2] None of this was done here by the ALJ with respect to Dr. Binkley's medical opinions set forth in his December 15, 2011 report.

Moreover, the Court rejects the Commissioner's argument that the ALJ's failures can be seen as harmless error.

As explained in *Wilson*, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because [the aggrieved party]

---

[2]In other words,"[A] decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544-45 (6th Cir. 2004).

appears to have had little chance of success on the merits anyway.' *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir.1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527 [ ], would afford the Commissioner the ability the violate the regulation[s] with impunity and render the protections promised therein illusory." *Wilson*, 378 F.3d at 546.

Nevertheless, in *Wilson*, the Sixth Circuit "observed that, in some circumstances, a violation of the rule might be 'harmless error' if (1) 'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it'; (2) 'if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) 'where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.' *Id*. at 547." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x. 543, 551 (6th Cir. 2010).

None of those circumstances exist here. This is not a case where the treating source's opinion is so patently deficient that the Commissioner could not possibly credit it. In addition, the ALJ did not adopt the opinion of Dr. Binkley or make findings consistent with his opinion. Rather, Dr. Binkley's December 15, 2011 report identified greater restrictions on Plaintiff's ability to work than those found by the ALJ. Finally, this is not a situation where the goals of § 1527 were met despite the ALJ's failure to comply with the regulations.

Accordingly, this Court concludes that the ALJ failed to properly evaluate the medical opinion evidence from Plaintiff's treating psychiatrist, Dr. Binkley, and that failure warrants remand.

Plaintiff also asserts that the ALJ failed to properly evaluate and explain his credibility

assessment of Plaintiff. (*See* Pl.'s Br. at 16-19). This Court agrees.

The ALJ first stated that, while Plaintiff's medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (ALJ Opin. at 7).

As an initial matter, as was the case in *Tell*, the ALJ did not even identify which of Plaintiff's statements he found not credible. *Tell v. Comm'r of Soc. Sec.*, 2012 WL 3679138 at *11 (E.D. Mich. July 13, 2012).

Moreover, as other judges in this district have expressed, the ALJ's assertion that Plaintiff's statements are not credible "to the extent they are inconsistent with" the RFC is meaningless boilerplate language. *See, e.g., Prather v. Comm'r of Soc. Sec.*, 2013 WL 765103 (E.D. Mich. Feb. 28, 2013) (Explaining that such boilerplate language "misses that a claimant's credibility informs her residual functional capacity, not the other way around.") (citing *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012)).

In a later portion of her opinion, the ALJ stated that Plaintiff's allegations of disability are "less than fully credible." (ALJ Opin. at 10). The ALJ, however, failed to provide sufficient explanation for that assessment.

One of the ALJ's stated reason for discrediting Plaintiff's credibility is because Plaintiff "testified that he is able to assist with some household chores and assist with caring for his two young children, which can be physically and mentally demanding." (ALJ Opin. at 10).

An ALJ may certainly consider household chores and other activities engaged in by a claimant in evaluating a claimant's assertions of pain or ailments. *Walters v. Comm'r of Soc.*

*Sec*., 127 F.3d 525, 531 (6th Cir. 1997). But here, the ALJ's description of Plaintiff's ability to perform household chores and care for his young children mischaracterizes Plaintiff's testimony.

As far as caring for his two young children, Plaintiff simply testified that on a typical day he and his wife eat breakfast with the two children, and that he and his wife try to help their preschool child with his "homework," or otherwise interact with him, before he leaves for school in the morning. Those are hardly "physically and mentally demanding" activities and there is no other testimony as to Plaintiff caring for the children in any other manner. To the contrary, Plaintiff testified that he cannot even be left alone with the children, for fear of his collapsing, and that his wife stays home to care for both Plaintiff and the children.

As far as his ability to perform household chores, Plaintiff testified that "on really, really good days I'm able to help out a little bit around the house, like I'm able to do the dishes for 15-20 minutes, able to pick up clothes off the floor, just little thing to try to help my wife out." (12/21/11 Hrg. Tr. at 51-52). Those household activities are far more limited than those at issue in *Rogers*, which the Sixth Circuit noted were not comparable to typical work activities.[3] " *Rogers*, 486 F.3d at 248.

That leaves, as the remaining basis for finding Plaintiff less than fully credible, that the ALJ found that the objective evidence does not match Plaintiff's subjective complaints. (ALJ Opin. at 10). But, as explained in *Tell*:

> [A]n ALJ must not reject a claimant's "statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical

[3]"Typical or basic work activities refer to 'the abilities and aptitudes necessary to do most jobs,' including among other things 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.' 20 C.F.R. §416.921(b)." *Rogers*, 486 F.3d at 248 n.6.

> evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96–7p, 1996 WL 374186. In fact, the regulations provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F.Supp.2d 724, 733 (N.D.Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96–7p, 1996 WL 374186 at *2.

*Tell*, *supra*, at * 11.

Accordingly, upon remand, the ALJ must assess Plaintiff's credibility anew and provide sufficient reasons for her credibility determination.[4]

**CONCLUSION & ORDER**

For the reasons set forth above, the Court shall enter judgment in favor of Plaintiff, reversing the Commissioner's decision and remanding this case to the Social Security Administration for further administrative proceedings, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[4]Given the above rulings, this Court need not discuss Plaintiff's third and final argument, that the ALJ relied on flawed vocational expert testimony, in great detail. (*See* Pl.'s Br. at 19-21). Since the ALJ's assessment of Plaintiff's residual functional capacity is driven by consideration of "all of the relevant medical and other evidence," her RFC finding may change, which would impact the vocational expert's testimony.

As such, IT IS ORDERED that Plaintiff's Motion for Summary Judgment IS GRANTED IN PART. The Motion is GRANTED to the extent that the Court hereby REMANDS the case for further proceedings consistent with this Opinion & Order. The motion is DENIED in all other respects.

IT IS FURTHER ORDERED that the Commissioner's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 7, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 7, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager